Robert A. WILSON, Plaintiff,

v.

Frank DALENE; Roy Dalene; Hamptons Luxury Homes, Inc.; Raich Ende Malter & Co., LLP; & Morrit Hock Hamroff & Horwitz, LLP, Defendants.

No. 09–CV–1394 (JFB)(AKT).

United States District Court, E.D. New York.

March 29, 2010.

Robert A. Wilson, pro se.

James M. Wicks and Lucia Deschamps Bauknight of Farrell Fritz, P.C., Uniondale, NY, for defendants Frank Dalene, Roy Dalene, and Hamptons Luxury Homes, Inc.

Peter J. Larkin and William J. Kelly of Wilson, Elser, Moskowitz, Edelman & Dicker, White Plains, NY, for defendants Raich Ende Malter & Co., LLP.

Matthew J. Bizzaro and Marian Rice of L'Abbate, Balkan, Colavita & Contini, LLP, Garden City, NY, for defendant Moritt Hock Hamroff & Horwitz, LLP.

## MEMORANDUM AND ORDER

JOSEPH F. BIANCO, District Judge:

On April 3, 2009, *pro se* plaintiff Robert A. Wilson (hereinafter "plaintiff" or "Wil-

son") filed the complaint in this action against defendants Frank Dalene, Roy Dalene, Hamptons Luxury Homes, Inc. (hereinafter "HLXH"), Raich Ende Malter & Co., LLP (hereinafter "REM"), and Morrit, Hock, Hamroff & Horwitz, LLP (hereinafter "MHHH"), (collectively "defendants"), alleging securities fraud under Section 10(b), Rule 10b–5, and Section 20(a) of the Securities Exchange Act of 1934. On June 26, 2009, defendants filed motions to dismiss plaintiff's Amended Complaint in its entirety for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. On July 29, 2009, plaintiff filed a motion for summary judgment. By Order dated November 6, 2009, this Court referred defendants' motions and plaintiff's motion to the Honorable E. Thomas Boyle, United States Magistrate Judge, for a report and recommendation. Presently before the Court are plaintiff's objections to Magistrate Judge Boyle's January 4, 2010 Report and Recommendation, in which he recommended that this Court grant defendants' motions to dismiss in their entirety and deny plaintiff's motion in its entirety. For the reasons set forth below, the Court adopts the thorough and well-reasoned Report and Recommendation of Judge Boyle with the exception of the statute of limitations issue. Accordingly, the Court denies defendants' motion to dismiss on statute of limitations grounds but grants the motion to dismiss the Amended Complaint on the other grounds set forth by Judge Boyle. However, given the nature of the defect and in light of plaintiff's March 1, 2010 letter to the Court and his *pro se* status, the Court grants plaintiff leave to amend his complaint to attempt to correct, if possible, the pleading deficiencies identified in the R & R and this Memorandum and Order.

## I. PROCEDURAL HISTORY

On April 3, 2009, *pro se* plaintiff filed a complaint in this action against defendants,

and moved by an Order to Show Cause for a preliminary injunction and temporary restraining order against defendants. The temporary restraining order was denied on April 3, 2009, and the motion for a preliminary injunction was denied on April 29, 2009. On May 27, 2009, plaintiff filed an Amended Complaint against defendants.

By letters dated April 22, 2009 and April 24, 2009, defendants requested a pre-motion conference in anticipation of filing motions to dismiss the Amended Complaint. Defendants filed their motions to dismiss on June 26, 2009. Plaintiff responded in opposition on July 29, 2009 and August 6, 2009, and also filed a "motion to dismiss/motion for summary judgment" on those dates. Defendants submitted their opposition and replies on August 17, 2009. By Order dated November 6, 2009, the Court referred the motions to Magistrate Judge E. Thomas Boyle for a report and recommendation.

On November 13, 2009, defendants requested a stay of discovery pending a decision on their motion to dismiss. On November 18, 2009, Magistrate Judge Boyle issued an Order staying discovery pending the outcome of the motions to dismiss. On November 23, 2009, plaintiff moved for a reconsideration of the stay, stating that he had not received notice of defendants' motion for a stay until the date on which it was granted. The motion for reconsideration was granted on November 24, 2009, but the stay of discovery was reinstated after consideration of plaintiff's opposition. On December 7, 2009, plaintiff filed an Order to Show Cause that the Court interpreted as an appeal of Magistrate Judge Boyle's Order staying discovery in the action. Defendants filed their opposition to plaintiff's Order to Show Cause on December 23, 2009.

On January 4, 2010, Magistrate Judge Boyle issued a Report and Recommenda-

tion (the "R & R"), recommending that this action be dismissed in its entirety. The R & R further instructed that any objections to the R & R be submitted within ten (10) days of receipt. (*See* Report and Recommendation dated January 4, 2010, at 23.) As indicated by the docket sheet, a copy of the R & R was mailed to plaintiff on January 4, 2010. (*See* Docket Entry [63].) Plaintiff filed objections to the R & R with the Court on January 11, 2010. Defendants Frank Dalene, Roy Dalene, HLXH, and MHHH filed their opposition on January 25, 2010. Plaintiff filed a reply on January 28, 2010. The Court has fully considered all the submissions. For the reasons set forth below, the Court agrees with Judge Boyle's recommendation, and adopts the R & R with the exception of the statute of limitations issue, but will provide plaintiff with an opportunity to file an amended complaint to attempt to cure the defects identified in the pleadings.

## II. STANDARD OF REVIEW

■ A district judge may accept, reject, or modify, in whole or in part, the findings and recommendations of the Magistrate Judge. *See DeLuca v. Lord,* 858 F.Supp. 1330, 1345 (S.D.N.Y.1994); *Walker v. Hood,* 679 F.Supp. 372, 374 (S.D.N.Y. 1988). As to those portions of a report to which no "specific written objections" are made, the Court may accept the findings contained therein, as long as the factual and legal bases supporting the findings are not clearly erroneous. *See* Fed.R.Civ.P. 72(b); *Greene v. WCI Holdings Corp.,* 956 F.Supp. 509, 513 (S.D.N.Y.1997). As to portions of a report to which specific written objections are made, the Court reviews such findings *de novo.* *See* Fed.R.Civ.P. 72(b)(3); *Hynes v. Squillace,* 143 F.3d 653, 656 (2d Cir.1998); *United States v. Male Juvenile,* 121 F.3d 34, 38 (2d Cir.1997).

The Court has conducted a review of the full record, including, *inter alia,* the Amended Complaint, the parties' respective submissions in connection with the defendants' motions to dismiss and plaintiff's motion for summary judgment, as well as the R & R, the applicable law and plaintiff's objections. Having reviewed *de novo* all the portions of the R & R to which plaintiff specifically objects, and having reviewed the remainder of the R & R for clear error, the Court adopts the R & R's recommendations that the Amended Complaint should be dismissed for the reasons set forth below, with the exception of the statute of limitations issue, but with leave to re-plead.

## III. DISCUSSION

### A. Violations of Section 10(b) and Rule 10b–5

Plaintiff first argues that Magistrate Judge Boyle incorrectly concluded that plaintiff failed to state a claim for violations of Section 10(b) and Rule 10b–5 of the Exchange Act. Specifically, Judge Boyle found that plaintiff failed to allege any actionable misrepresentations, made with scienter, that were made in connection with a purchase or sale of securities. Judge Boyle further concluded that plaintiff's Amended Complaint had also failed to adequately plead transaction causation or loss causation such as to be actionable.

Plaintiff's objection to the R & R asserts that defendants made a material misrepresentation when they agreed to pursue plaintiff's proposed roll-up strategy in connection with the purchase of plaintiff's stock. Plaintiff contends that this was an actionable misrepresentation because, he claims, at the time, defendants had no intention of pursuing the roll-up strategy. Judge Boyle concluded that plaintiff's Amended Complaint offers no factual allegations in support of his claim that defendants had no intention of using the roll-up strategy, and, thus, must fail. The Court agrees.

In order to successfully plead a violation of Section 10(b) and Rule 10b–5, "plaintiff must allege that the defendant (1) made misstatements or omissions of material fact, (2) with scienter, (3) in connection with the purchase or sale of securities, (4) upon which the plaintiff relied, and (5) that the plaintiff's reliance was the proximate cause of its injury." *Hall v. The Children's Place Retail Stores, Inc.,* 580 F.Supp.2d 212, 225 (S.D.N.Y.2008) (quoting *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 105 (2d Cir.2007)).

Federal Rule of Civil Procedure 9(b) requires all averments of fraud and the circumstances constituting fraud to be stated with particularity. "[I]n order to comply with Rule 9(b), 'the complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'" *Lerner v. Fleet Bank, N.A.,* 459 F.3d 273, 290 (2d Cir.2006) (quoting *Mills v. Polar Molecular Corp.,* 12 F.3d 1170, 1175 (2d Cir.1993)). In addition, "[a]lthough Rule 9(b) allows a plaintiff to allege fraudulent intent generally, a plaintiff must 'allege facts that give rise to a strong inference of fraudulent intent.'" *Sibersky v. Borah, Goldstein, Altschuler & Schwartz, P.C.,* No. 99–CV–3227 (JGK), 2000 WL 1448635, at *7, 2000 U.S. Dist. LEXIS 14043, at *23 (S.D.N.Y. Sept. 22, 2000) (quoting *Shields v. Citytrust Bancorp, Inc.,* 25 F.3d 1124, 1128 (2d Cir. 1994)). "These requirements ensure that 'a complaint alleging fraud' is filed 'only after a wrong is reasonably believed to have occurred,' and 'not to find one.'" *Abercrombie v. Andrew Coll.,* 438 F.Supp.2d 243, 272 (S.D.N.Y.2006) (quoting *Segal v. Gordon,* 467 F.2d 602, 607–08 (2d Cir.1972)). "Where multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud." *DiVittorio v. Equidyne Extractive Indus.,* 822 F.2d 1242, 1247 (2d Cir.1987).

In addition, the Private Securities Litigation Reform Act ("PSLRA"), enacted in 1995, further heightens the fraud pleading requirements of Rule 9(b) in the context of allegations of securities fraud. The PSLRA states that in a securities fraud case alleging a material misrepresentation or omission "the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C § 78u–4(b)(1)(B).

Here, even applying the less stringent standard granted to *pro se* litigants, plaintiff's allegations of fraud fail to comply with the requirements of Rule 9(b) and the PSLRA. Plaintiff's complaint fails to identify particular statements by defendants that were fraudulent. Plaintiff also fails to identify the speaker of the alleged statements and where and when the statements were made. Plaintiff's Amended Complaint only generally references an agreement "between the Plaintiff and the Dalene[s] on a roll-up strategy to create a construction services." (Am. Compl. at 8.) Plaintiff does not identify who particularly made what specific representations regarding the agreement on a roll-up strategy. Accordingly, plaintiff's Amended Complaint fails to adequately plead a claim as required by Rule 9(b) and the PSLRA. *See Kosovich v. Metro Homes, LLC,* No. 09 Civ. 6992(JSR), 2009 WL 5171737, at *3 (S.D.N.Y. Dec. 30, 2009) ("Here, however, the complaint's allegations are largely against 'defendants' generally, and the complaint repeatedly fails to identify who was responsible for making each alleged

misrepresentation or omission, far less specifies the precise content of the alleged misstatements or explains why they are fraudulent."); *Fingar v. Prudential–Bache Sec., Inc.,* 662 F.Supp. 1119, 1123 (E.D.N.Y.1987) ("The volume of these allegations does not compensate for the complaint's failure to tie them together with more specific details as to the dates and content of relevant statements, the manner in which certain ones were misleading, and how they are connected to the particular defendants named in the complaint.").

Moreover, the Amended Complaint does not adequately connect the alleged misrepresentations with the purchase or sale of securities. As noted in Judge Boyle's thorough and well-reasoned R & R, the only securities transaction alleged in the Amended Complaint occurred in December 2003, when plaintiff transferred his shares in HLXH to the Dalenes. (*See* Am. Compl. at 8.) However, the allegations in the Amended Complaint surrounding this transaction are insufficient to adequately state a claim for relief for misrepresentations "in connection with the purchase or sale of" securities. *See Ronzani v. Sanofi S.A.,* 899 F.2d 195, 197–98 (2d Cir.1990) ("[T]he amended complaint does not allege that there was a contractual relationship to buy or sell securities between the parties. There is no reference in the amended complaint to a contract which required [defendant] to resell the La Prairie shares to [plaintiff]. The amended complaint alleged only one agreement: that the purchasing parties would submit a 'combined offer' to Cyanamid to acquire its subsidiaries. Under the agreement as pleaded, if the joint offer were accepted by Cyanamid, [plaintiff] would acquire the La Prairie shares and [defendant] would acquire the Jacqueline Cochran shares. Read in this manner, the gravamen of the amended complaint is that [defendant] breached an agreement to make a joint offer to Cyanamid when it independently purchased the two subsidiaries from Cyanamid. As it appears that the district court correctly held, this allegation is insufficient to state a claim under § 10(b) and Rule 10b–5."); *R.H. Damon & Co. v. Softkey Software Prods., Inc.,* 811 F.Supp. 986, 992 (S.D.N.Y.1993) ("[T]he alleged misrepresentations pertain to the conditions under which the defendants would compensate the plaintiffs for their services. As such, plaintiffs do not allege a misrepresentation as to the value of a security. Without such misrepresentations plaintiffs cannot satisfy the 'in connection with' language of § 10(b) and Rule 1 0b–5. While it is possible that defendants['] alleged misrepresentations pertain to plaintiffs' compensation in connection with their services, these facts certainly do not implicate the '34 Act."); *see also Troyer v. Karcagi,* 476 F.Supp. 1142, 1148 (S.D.N.Y.1979) ("To satisfy the 'in connection with' requirement, however, more than a purchase is required. That is, there must be a causal connection between a defendant's misstatements or omissions and the plaintiff's purchase." (citing *SEC v. Texas Gulf Sulphur Co.,* 401 F.2d 833, 860 (2d Cir.1968))).

Instead, the vast majority of plaintiff's allegations involve alleged wrongdoing or fraudulent conduct that occurred well after the 2003 stock transaction. The R & R correctly notes that the only statements that are actionable are the ones made in 2003 because that is when the alleged securities transaction occurred. Plaintiff cannot rely on statements that occurred after the securities transaction at issue in support of his claim of misrepresentation. *Samuel M. Feinberg Testamentary Trust v. Carter,* 652 F.Supp. 1066, 1080 (S.D.N.Y. 1987) ("Where the only manipulative or deceptive acts identified in a complaint occur after a challenged securities purchase or sale, a court must dismiss the complaint as failing to state a cause of action for federal securities fraud."); *Troy-*

*er,* 476 F.Supp. at 1148 ("There can be no such causal connection where the misstatement or omission occurred after the purchase.").

The Court further notes that the decision to refrain from buying or selling securities does not give rise to an actionable claim under Section 10(b). *See, e.g., Gordon Partners v. Blumenthal,* No. 02 Civ. 7377(LAK)(AJP), 2007 WL 431864, at *9 (S.D.N.Y. Feb. 9, 2007) ("Section 10(b) and Rule 10b–5 prohibit securities fraud 'in connection with the purchase or sale' of securities. Accordingly, to state a claim thereunder, a plaintiff must allege that he was an actual purchaser or seller of securities. Among the potential plaintiffs barred by this rule are persons injured by 'decisions to hold or refrain from trading.'" (quoting *Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt. LLC,* 376 F.Supp.2d 385, 402 (S.D.N.Y.2005))); *see also Caiola v. Citibank, N.A.,* 295 F.3d 312, 322 (2d Cir.2002) ("Under the first element—fraud committed 'in connection with the purchase or sale of any security'—standing is limited to actual purchasers or sellers of securities."); *First Equity Corp. v. Standard & Poor's Corp.,* 869 F.2d 175, 180 n. 2 (2d Cir.1989) ("Under *Blue Chip* [*Stamps v. Manor Drug Stores,* 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975) ], plaintiffs suing under Section 10(b) of the Securities Exchange Act of 1934 may recover only for losses that result from decisions to buy or sell, not from decisions to hold or refrain from trading."); *Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of America Sec., LLC,* 446 F.Supp.2d 163, 189–90 (S.D.N.Y.2006) ("Defendants argue that plaintiffs may only bring a[S]ection 10(b) claim with respect to actual purchases or sales of securities, and may not bring any claims that relate to the retention of securities. Defendants are correct."). Accordingly, plaintiff may not argue that he re-tained the securities he received in 2003 as a result of fraud by the defendants.

In addition, the PSLRA requires that in cases where a particular state of mind on the part of the defendant is required, the plaintiff must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u–4(b)(2). A plaintiff can establish a "strong inference" of scienter by alleging either: (1) facts constituting "strong circumstantial evidence of conscious misbehavior or recklessness," or (2) facts showing that defendants had "both motive and opportunity to commit fraud." *In re PXRE Group, Ltd. Sec. Litig.,* 600 F.Supp.2d 510, 534 (S.D.N.Y.2009). "[I]n determining whether the pleaded facts give rise to a 'strong' inference of scienter, the court must take into account plausible opposing inferences." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 323, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007). A strong inference of scienter "must be more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Id.* at 314, 127 S.Ct. 2499.

Plaintiff attempts to argue that the scienter requirement is met because "[w]hat could be a stronger inference of scienter than people who make an agreement of exchange th[e]n refuse to follow through on their portion of the exchange." (Pl.'s Objection at 5.) Indeed, much of plaintiff's objections to the R & R argues that the Dalenes and HLXH breached a contract with him and that, therefore, he has successfully alleged and proven that they acted with scienter and committed securities fraud. Although entering into a contract with no intention of moving forward with the agreement may indicate scienter, *see Wharf Holdings Ltd. v. United Int'l Holdings,* 532 U.S. 588, 596, 121

S.Ct. 1776, 149 L.Ed.2d 845 (2001), a party's breach of an agreement, without more, will not constitute scienter for purposes of a claim of fraud. *Stewart v. Jackson & Nash,* 976 F.2d 86, 89 (2d Cir. 1992) (noting the "distinction between a prospective business partner's promissory statement[s] as to what will be done in the future, which give rise only to a breach of contract claim, and his or her false representation[s] of present fact, which give rise to a separable claim of fraudulent inducement" (quotation omitted)); *see also U.S. ex rel. Lusby v. Rolls–Royce Corp.,* 570 F.3d 849, 854 (7th Cir.2009) ("Simple breach of contract is not fraud, but making a promise while planning not to keep it is fraud."). Instead, plaintiff must allege specific statements by defendants that tend to suggest that they did not intend to go forward with the agreement, rather than relying on the conclusory statement that the defendants did not intend to honor the contract. *E.g., In re U.S. West, Inc. Sec. Litig.,* 65 Fed.Appx. 856, 862 (3d Cir.2003) ("Nacchio's statements [that 'Every merger can be intervened on; it only costs money'] are insufficient to give rise to an inference that Qwest and Nacchio either acted without good faith when entering into and later circulating the agreement or never intended to comply with the non-solicitation provision."). Plaintiff does not allege with specificity any facts suggesting that the Dalenes and HLXH did not intend to go forward with use of the roll-up strategy *at the time of the agreement.* Plaintiff only points to facts indicating that the Dalenes and HLXH ultimately did not proceed with the alleged agreement. This Court, like others in this Circuit, "applies Rule 9 strictly to prevent a plaintiff with a largely groundless suit from conducting extensive discovery in the hope that the process will ultimately reveal relevant evidence. To pass muster in this Circuit a complaint must allege with some specificity the acts constituting the

fraud. Conclusory allegations that defendant's conduct was fraudulent or deceptive are not enough." *Lerner v. FNB Rochester Corp.,* 841 F.Supp. 97, 102 (W.D.N.Y. 1993) (internal citation omitted). The Dalenes' statements can alternatively be characterized as "forward-looking statements" about "plans and objectives of management for future operations." *In re EVCI Colls. Holding Corp. Sec. Litig.,* 469 F.Supp.2d 88, 101 (S.D.N.Y.2006).

Furthermore, plaintiff's Amended Complaint in fact contains an alternate explanation for the Dalenes' and HLXH's failure to go through with the proposed transaction—"present economic conditions." (Am. Compl. at 5.) Moreover, this alleged statement was made to plaintiff by one of the Dalenes on March 4, 2009—six years after the alleged agreement. This supports an opposing inference of non-fraudulent intent. Furthermore, the fact that this statement was made six years after the agreement makes it more plausible that, over time, economic conditions influenced the Dalenes and HLXH to abandon the proposed roll-up plan rather than, as plaintiff alleges, that defendants never intended to go through with the transaction. *See Tellabs, Inc.,* 551 U.S. at 314, 127 S.Ct. 2499. Thus, plaintiff's Amended Complaint fails to adequately allege that the Dalenes and HLXH acted with scienter and made a fraudulent misrepresentation at the time of their transaction.

Furthermore, the Court notes that, even assuming that plaintiff had adequately alleged the scienter requirement in connection with a material misrepresentation, as discussed in the R & R, plaintiff has also failed to adequately allege the other elements of Section 10(b) and Rule 10(b)(5) violations—namely, reliance, economic loss, and causation. Plaintiff's Amended Complaint does not state losses suffered by plaintiff as a result of the alleged mis-

representation regarding the roll-up at the time of the 2003 securities transaction. To adequately state a claim of securities fraud, the plaintiff must allege "a causal connection between defendants' non-disclosures and the subsequent decline in the value of [the security]." *Emergent Capital Inv. Mgmt., LLC v. Stonepath Group, Inc.,* 343 F.3d 189, 197 (2d Cir.2003). Thus, this Court adopts Magistrate Judge Boyle's R & R inasmuch as it recommends granting the Dalenes' and HLXH's motion to dismiss the allegations of securities fraud under Section 10(b) and Rule 10b–5 against them.

### B. Statute of Limitations

■ Judge Boyle found that, even if plaintiff had adequately stated a claim for relief for securities fraud, plaintiff's cause of action was barred by the statute of limitations because claims brought pursuant to Section 10(b) of the Exchange Act must be initiated no later than the earlier of two years after the discovery of the facts constituting the violation or five years after such violation. *See Plymouth County Ret. Ass'n v. Schroeder,* 576 F.Supp.2d 360, 375 (E.D.N.Y.2008). Plaintiff argues that his action falls within the statute of limitations. The Court concludes that there is insufficient information in the Amended Complaint to determine as a matter of law, at the motion to dismiss stage, that plaintiff was on notice of the fraud in 2006 such that the two-year limitations bars his lawsuit. Thus, the motion to dismiss on statute of limitations grounds is denied.

As a threshold matter, the Court notes that plaintiff, in support of is argument, cites extensively from an amicus curiae brief submitted by the Securities and Exchange Commission in *AIG Asian Infrastructure Fund L.P. v. Chase Manhattan Asia Limited,* 122 Fed.Appx. 541 (2d Cir. 2005), which seems to argue that the proper statute of limitations for private fraud

actions should be within five years of the violation. Plaintiff next argues that the Second Circuit opinion in *Staehr v. Hartford Financial Services Group, Inc.,* 547 F.3d 406 (2d Cir.2008), supports his position. However, that case held that a private federal action for securities fraud must be commenced before the earlier of "2 years after the discovery of the facts constituting the violation" or "5 years after such violation." *Id.* at 411 (citing 28 U.S.C. § 1658(b)). The Second Circuit noted that "[t]he two-year statute of limitations for securities fraud claims under the Exchange Act begins to run only after the plaintiff 'obtains actual knowledge of the facts giving rise to the action or notice of the facts, which in the exercise of reasonable diligence, would have led to actual knowledge.'" *Id.* (quoting *LC Capital Partners, LP v. Frontier Ins. Group, Inc.,* 318 F.3d 148, 154 (2d Cir.2003)).

■ "Courts can 'readily resolve the issue' of inquiry notice as a matter of law on a motion to dismiss—as has been done in 'a vast number of cases' in this circuit—where 'the facts needed for determination of when a reasonable investor of ordinary intelligence would have been aware of the existence of fraud can be gleaned from the complaint and papers ... integral to the complaint.'" *Staehr,* 547 F.3d at 412 (quoting *Lentell v. Merrill Lynch & Co.,* 396 F.3d 161, 168 (2d Cir.2005)); *Dodds v. Cigna Sec., Inc.,* 12 F.3d 346, 350 (2d Cir.1993) (concluding that whether an investor of ordinary intelligence would be on inquiry notice based on circumstances described in the complaint may be resolved as a matter of law). Moreover, "[a]n investor does not have to have notice of the entire fraud being perpetrated to be on inquiry notice." *Dodds,* 12 F.3d at 352.

Here, Magistrate Judge Boyle correctly noted that plaintiff has alleged that he had concerns in 2006 about the Dalenes' failure

to move forward with the roll-up strategy. Specifically, in his Amended Complaint, plaintiff states that he "began to become troubled by the Defendants['] actions" shortly before HLXH acquired Telemark in 2006. (Am. Compl. at 2.) The Amended Complaint further stated that there were errors with the 2006 10–KSBs and 2006 10–QSBs. (*Id.* at 8–9.) Plaintiff also alleged that "[t]he 2006 [second] quarter 10–QSB reports that the company had started implementation of its business model by acquiring Telemark and that it was going to acquire a real estate broker and a property and casualty insurance company in 2006. This did not [occur] and the public was never informed of the reason." (Am. Compl. at 8.) Plaintiff further alleged that "[t]he 2006 [third] quarter 10–QSB, 2006 10–KSB, 2007 [first, second, and third] quarter 10–QSB and the 2007 10–KSB all reported the planned roll-up strategy but the Company failed to implement the plan." (*Id.*)

However, although plaintiff acknowledged that he had concerns in 2006 about the failure to implement the roll-up strategy, the Court cannot conclude at the motion to dismiss stage that such a concern is sufficient to put plaintiff on notice as to the alleged fraud. In other words, there is insufficient basis in the Amended Complaint to warrant application of the two-year statute of limitations clock in 2006. Thus, the motion to dismiss on statute of limitations grounds is denied.

## C. Claims against Raich Ende Maulter & Co. and Moritt Hock Hamroff & Horwitz LLP

Judge Boyle determined that plaintiff's claims against REM and MHHH must fail. In plaintiff's objections, he argues that "by not informing the Commission of the Dalenes['] breach of contract both of the defendants violated Title I, III, & IX and Section 103, 108, 307, & 902 of Sarbanes Oxley and the PCAOB Rules of Conduct-ed, AU section 110.02." (Pl.'s Objection ¶ 8.) Plaintiff continues that "[t]his is an automatic violation of the Securities Exchange Act of 1934 and Section 10(b) and Rule 10(b)(5) under Section 3(b)(1) of Sarbanes Oxley. In fact, MHHH knowing that the opening price was based on implementation of the roll-up sold stock on the opening and did not carry out their responsibility to protect the shareholders." (*Id.*)

As discussed extensively *supra*, to state a cause of action under Section 10(b) and Rule 10b–5, "a plaintiff must plead that in connection with the purchase or sale of securities, the defendant, acting with scienter, made a false material representation or omitted to disclose material information and that plaintiff's reliance on defendant's action cause [plaintiff] injury." *See Chill v. Gen. Elec. Co.,* 101 F.3d 263, 266 (2d Cir.1996) (citation omitted). "It is well established that to meet the 'in connection with' requirement [of Section 10(b) ], the fraud practiced must have been prior to or contemporaneous with" the purchase or sale of securities. *Goldman v. McMahan, Brafman, Morgan & Co.,* 706 F.Supp. 256, 259 n. 3 (S.D.N.Y.1989) (citation omitted). Furthermore, as discussed above, Federal Rule of Civil Procedure 9(b) requires that claims of fraud be "stated with particularity." Fed.R.Civ.P. 9(b).

The Court concludes that Judge Boyle's R & R correctly analyzed the deficiencies in plaintiff's claims that REM and MHHH aided and abetted the alleged securities fraud by the Dalenes and HLXH, and further notes that without any underlying violation, plaintiff cannot successfully allege a claim of aiding and abetting fraud. *See Gabriel Capital, L.P. v. NatWest Finance, Inc.,* 94 F.Supp.2d 491, 500 (S.D.N.Y.2000). Plaintiff's objections to the R & R seem to suggest that plaintiff is alleging that REM and MHHH did not aid

and abet securities fraud committed by the other defendants but rather that they were the primary violators of Section 10(b) and Rule 10b–5 themselves. If plaintiff's Amended Complaint does not contain an aiding and abetting claim against REM and MHHH but rather attempts to assert a free-standing violation of Section 10(b) and Rule 10b–5 by REM and MHHH as primary violators, this claim too must fail.

A defendant "must actually make a false or misleading statement in order to be held liable under Section 10(b). Anything short of such conduct is merely aiding and abetting, and no matter how substantial that aid may be, it is not enough to trigger liability under Section 10(b).' " *Wright v. Ernst & Young LLP,* 152 F.3d 169, 175 (2d Cir.1998) (citation omitted). However, "[t]here is no requirement that the alleged violator directly communicate misrepresentations to [investors] for primary liability to attach." *Id.* (citation omitted).

The Amended Complaint lacks particularized allegations of false or misleading statements by REM and MHHH. Rather, the Amended Complaint merely alludes to "malpractices of Raich Ende Malter & Co....." (Am. Compl. at 4.) Plaintiff further alleges unrelated misconduct by REM's managers involving other companies. The primary thrust of plaintiff's allegations regarding REM and MHHH is that they knew of the problems with HLXH's financial reports on Form 10–

KSB for 2006 and 2007 and "they chose to do nothing." (*Id.*) Plaintiff similarly alleges in the Amended Complaint that he alerted REM and MHHH of problems with the balance sheet and 2006 10–KSB but that they did not respond or correct the alleged inaccuracies. Plaintiff also contends that REM also filed an independent certification of HLXH's balance sheet for the 2007 10–KSB. (Am. Compl. at 13.)

Plaintiff's allegations regarding REM and MHHH are deficient in several respects. First, plaintiff fails to explain with specificity how the alleged statements or inaction by these defendants were misleading. *See Rombach v. Chang,* 355 F.3d 164, 174 (2d Cir.2004) ("[P]laintiffs must do more than say that the statements in the press releases were false and misleading; they must demonstrate with specificity why and how that is so."). Plaintiff further fails to allege facts supporting his contention that these defendants acted with scienter or that any sale of securities was made subsequent to or contemporaneous with this alleged misconduct. Indeed, plaintiff's own sale of securities—the only securities transaction specifically referenced in the Amended Complaint—occurred in 2003, years prior to the alleged misconduct by REM and MHHH.[1]

Plaintiff's Amended Complaint simply alleges that REM and MHHH were "aware of the following problems ... but never did anything to protect the minority

---

1. Plaintiff's Amended Complaint also states that "All defendants were aware that stockbrokers and investor[s] were informed of the strategy of the Company and that was the only reason they purchased to [sic] stock." (Am. Compl. at 14.) This statement is too vague and conclusory to support plaintiff's claims, and further, plaintiff cannot bring a claim on behalf of the corporation or someone else who bought or sold the securities as a result of defendants' allegedly fraudulent acts. *See, e.g., Ingenito v. Bermec Corp.,* 376 F.Supp. 1154, 1176 (S.D.N.Y.1974) ("[I]f a plaintiff cannot allege that he bought or sold the security involved in the fraud, his claim must fail 'both on proof of loss and the causal connection with the alleged violation of the Rule.' " (citation omitted)); *see also Nationwide Cellular Serv., Inc. v. Am. Mobile Commc'ns, Inc.,* Nos. 90 Civ. 6493(LBS), 91 Civ. 3587(LBS), 1991 WL 233284, at * 16 (S.D.N.Y. Oct. 29, 1991) ("[A] claim of waste belongs solely to the injured corporation, and plaintiff therefore lacks standing to sue in its individual capacity.").

shareholders." (Am. Compl. at 14, 15.) These allegations, without more, are insufficient to allege liability of REM and MHHH under Section 10(b) and Rule 10b–5. *See, e.g., Varghese v. China Shenghuo Pharma. Holdings, Inc.*, 672 F.Supp.2d 596, 609 (S.D.N.Y.2009) ("When pleading fraud against auditors, the standards for alleging scienter are especially stringent. Plaintiffs may plead recklessness, but the recklessness must entail a mental state so culpable that it approximate[s] an actual intent to aid in the fraud being perpetrated by the audited company." (internal quotation marks and citations omitted)); *In re Refco, Inc. Sec. Litig.*, 609 F.Supp.2d 304, 314 (S.D.N.Y.2009) ("Although it is well settled that a lawyer who makes a material misstatement (or omission) on which a purchaser or seller of securities relies may be liable as a primary violator under § 10(b) and Rule 10b–5(b), it is equally well settled that a secondary actor cannot incur primary liability ... for a statement not attributed to the actor at the time of its dissemination precisely because [s]uch a holding would circumvent the reliance requirements of the Act." (internal citation omitted)); *In re Scottish Re Group Sec. Litig.*, 524 F.Supp.2d 370, 398 (S.D.N.Y. 2007) ("[T]here is a high standard for pleading auditor scienter. Plaintiffs must allege that [t]he accounting practices were so deficient that the audit amounted to no audit at all, or an egregious refusal to see the obvious, or to investigate the doubtful.... At best, plaintiffs have alleged that a reasonable auditor would have discovered the problems with the Company's valuation of the deferred tax assets and internal controls."); *In re Kendall Square Res. Corp. Sec. Litig.*, 868 F.Supp. 26, 28 (D.Mass.1994) (where accountant did not issue a report on the company's financial statements but merely "reviewed and approved" them, the accountant could not be liable for a material misstatement). *See generally Wright*, 152 F.3d at 173–76.

The Amended Complaint does not allege that REM caused the "problems" in the financial reports but rather merely alleges that it did nothing about them. Plaintiff does not point to specific deficiencies in the audit procedures employed by REM or specific "red flags" that were ignored by REM. Rather, plaintiff's Amended Complaint contains mere " 'blanket statements of wrongdoing,' " by these defendants, *In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, 381 F.Supp.2d 192, 238 (S.D.N.Y.2004) (quoting *Segarra v. Messina*, 153 F.R.D. 22, 28 (N.D.N.Y.1994)), and fails to identify the specific injury caused by the alleged wrongdoing.

To the extent plaintiff purports to bring a "duty to disclose" claim against defendants REM and MHHH, it is well established that a firm "has no duty to disclose fraudulent misconduct ... under Section 10(b) where it has not given some representation or certification, such as an opinion or certified statement, or has not invited the public to rely on the firm's financial judgment at the time." *In re Gas Reclamation, Inc. Sec. Litig.*, 659 F.Supp. 493, 505 (S.D.N.Y.1987); *accord Pahmer v. Greenberg*, 926 F.Supp. 287, 306 (E.D.N.Y.1996). As a threshold matter, the Amended Complaint does not assert that defendant MHHH made any affirmative representations regarding HLXH. Plaintiff's Amended Complaint does not point to any affirmative misrepresentations made by MHHH to shareholders or the investing public on which those shareholders or investors relied to their detriment. Nor does plaintiff allege that he himself relied upon any representations by MHHH. *See SEC v. Wolfson*, 539 F.3d 1249, 1258 n. 14 (10th Cir.2008) ("[A] private litigant must also show reliance on the fraud and the existence of damages or injuries suffered as a result thereof."). Thus, the Amended Complaint does not allege that MHHH violated a duty to dis-

close certain information to investors or shareholders. Accordingly, defendant MHHH's motion to dismiss plaintiff's claims that it violated Section 10(b) and Rule 10b–5 is granted.

Plaintiff alleges that defendant REM made one affirmative representation: a certification included with the 2007 10–KSB, that REM had audited the consolidated balance sheet of HLXH and determined that the financial statements fairly represented the financial position of HLXH as of December 31, 2007. (*See* Am. Compl. at 13.) An actionable claim under the Securities Act or the Exchange Act must plead an omission that involves information that the defendant has a duty to disclose.[2] *Hoffman v. UBS–AG*, 591 F.Supp.2d 522, 532 (S.D.N.Y.2008) (citing *In re Time Warner Inc. Sec. Litig.*, 9 F.3d 259, 267 (2d Cir.1993)). Any person or entity, including a lawyer, accountant, or bank, who employs a manipulative device or makes a material misstatement (or omission) on which a purchaser or seller of securities relies may be liable as a primary violator under 10b–5, assuming all of the requirements for primary liability under Rule 10b–5 are met. *Cent. Bank of Denver v. First Interstate Bank of Denver*, 511 U.S. 164, 191, 114 S.Ct. 1439, 128 L.Ed.2d 119 (1994). "[A]n accountant violates the 'duty to correct' and becomes primarily liable under § 10(b) and Rule 10b–5 when it (1) makes a statement in its certified opinion that is false or misleading when made; (2) subsequently learns or was reckless in not learning that the earlier statement was false or misleading; (3) knows or should know that potential investors are relying on the opinion and finan-

cial statements; yet (4) fails to take reasonable steps to correct or withdraw its opinion and/or the financial statements; and (5) all the other requirements for liability are satisfied." *Overton v. Todman & Co., CPAs, P.C.*, 478 F.3d 479, 486–87 (2d Cir.2007). Furthermore, "an accountant need correct only those particular statements set forth in its opinion and/or the certified financial statements. Unless an accountant exchanges its role for the role of an insider, an accountant is under no duty to divulge information collateral to the statements of accuracy and financial fact set forth in its opinion and the certified financial statements, respectively." *Id.* at 488 (internal citation omitted).

As discussed *supra*, plaintiff's allegations against REM fail to identify how REM made a material misrepresentation to the plaintiff in connection with the sale of a security. *See Forsberg v. Always Consulting, Inc.*, No. 06–CV–13488 (CS), 2008 WL 5449003, at *15 (S.D.N.Y. Dec. 31, 2008) (dismissing a complaint for failure to demonstrate that defendant made a material misrepresentation to the plaintiff in connection with the sale of a security). Plaintiff fails to allege that REM had any direct or indirect involvement with HLXH's sale of securities to the plaintiff or any other investors. *See id.* Nor does plaintiff allege how REM's alleged omissions misled plaintiff and caused plaintiff to suffer economic loss. Instead, plaintiff's Amended Complaint, though more detailed than his initial complaint, contains mere conclusory statements and allegations regarding REM's fraudulent conduct. At no point does plaintiff connect REM's alleged

---

**2.** "There are two ways that a plaintiff can establish a duty to disclose: (1) through an explicit regulatory or statutory requirement, or (2) when the omitted information is otherwise material." *Hoffman v. UBS–AG*, 591 F.Supp.2d 522, 532 (S.D.N.Y.2008). "To be material, the information need not be such

that a reasonable investor would necessarily change his investment decision based on the information, as long as a reasonable investor would have viewed it as significantly altering the 'total mix' of information available." *SEC v. Mayhew*, 121 F.3d 44, 52 (2d Cir.1997) (citation omitted).

omissions to specific injury suffered by plaintiff. Conclusory allegations of fraud will be dismissed under Rule 9(b). *See Shemtob v. Shearson, Hammill & Co.,* 448 F.2d 442, 444 (2d Cir.1971); *see also Ashcroft v. Iqbal,* —— U.S. ——, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009) ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). Thus, plaintiff's Amended Complaint also fails to state a claim that REM made a material misstatement or omission by failing to disclose certain information to which plaintiff alleges REM was privy.

In sum, plaintiff's Amended Complaint fails to state a claim for violation of Section 10(b) and Rule 10b–5 against REM and MHHH. Accordingly, the Court adopts Judge Boyle's recommendation and grants REM's and MHHH's motions to dismiss plaintiff's Section 10(b) and Rule 10b–5 claims against them.

### D. Section 20(a) Claims

Liability for violations of § 20(a) is derivative of liability for violations of § 10(b). *See S.E.C. v. First Jersey Sec., Inc.,* 101 F.3d 1450, 1472 (2d Cir.1996). Accordingly, without any primary violation of Section 10(b), plaintiff's claims for violation of Section 20(a) must be dismissed.

### IV. OPPORTUNITY TO REPLEAD

■ "Where dismissal is based on a *pro se* plaintiff's failure to comply with pleading conventions, a district court 'should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated.'" *Shelton v. Trs. of Columbia Univ.,* 236 Fed.Appx. 648, 649 (2d Cir.2007) (summary order) (quoting *Branum v. Clark,* 927 F.2d 698, 705 (2d Cir.1991)); *accord Abbas v. Dixon,* 480 F.3d 636, 639 (2d Cir.2007) (holding that the Court should give a plaintiff an opportunity to amend if the Court cannot "rule out any possibility, however unlikely it

might be, that an amended complaint would succeed in stating a claim" (quoting *Gomez v. USAA Fed. Sav. Bank,* 171 F.3d 794, 796 (2d Cir.1999) (internal quotation marks omitted))); *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000) ("A *pro se* complaint is to be read liberally. Certainly the court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." (quotation omitted)).

■ As outlined in detail in this Memorandum and Order, there are a number of pleading defects with regards to plaintiff's claims. However, although it is unclear whether all of the pleading defects can be cured, the Court is unable to determine at this juncture that any attempt to correct these pleading defects would necessarily be futile. Therefore, the Court grants plaintiff one opportunity to amend his complaint to provide additional allegations, if possible, and to provide clarification (as outlined in this Memorandum and Order) regarding plaintiff's claims. Specifically, if plaintiff does file a Second Amended Complaint, he should plead with greater specificity the facts and circumstances surrounding (1) his purchase or sale of securities in 2003; (2) the specific statements made by defendants that plaintiff alleges were material misrepresentations (including the time of such statements); (3) the circumstances giving rise to an inference of scienter on the part of defendants, specifically regarding their intent in 2003 not to follow through with the roll-up plan; (4) causation; and (5) specific losses suffered by plaintiff as a result of the alleged securities fraud. To the extent plaintiff intends to replead allegations against MHHH and REM, as with the claims against HLXH and the Dalenes, plaintiff's Second Amended Complaint should also contain greater detail regarding their al-

leged role in the fraud. The amended complaint must be captioned as plaintiff's "Second Amended Complaint" and must bear the same docket number as this Memorandum and Order.

## V. CONCLUSION

For the foregoing reasons, the Court adopts the R & R with the exception of the statute of limitations issue. Accordingly, the defendants' motion to dismiss on statute of limitations grounds is denied, but the motion to dismiss on the other grounds identified in the R & R is granted for the reasons set forth in the R & R. Given the dismissal of the complaint, plaintiff's motion for summary judgment is denied.[3] However, plaintiff is granted leave to file a Second Amended Complaint to address the pleading defects identified by the Court in the R & R and this Memorandum and Order.

The Court will conduct a telephone conference on Monday, April 19, 2010, at 11:00 a.m., to discuss the schedule for the filing of the Second Amended Complaint and any other issues the parties wish to address. A copy of this Order and the R & R has been mailed to *pro se* plaintiff.

SO ORDERED.

## *REPORT AND RECOMMENDATION*

E. THOMAS BOYLE, United States Magistrate Judge.

TO THE HONORABLE JOSEPH F. BIANCO, UNITED STATES DISTRICT JUDGE:

Before the court are three separate motions to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), by the following defendants: (1) Frank Dalene, Roy Dalene (the "Dalenes") and Hamptons Luxury Homes, Inc. ("HLXH") (collectively, the "HLXH Defendants"); (2) Raich Ende Malter & Co., LLP ("REM"); and, (3) Moritt Hock Hamroff & Horowitz, LLP ("MHHH"). The *pro se* plaintiff, Robert Wilson ("Wilson" or "plaintiff") opposes defendants' motions and cross-moves for the following: (1) summary judgment; (2) the appointment of a receiver for HLXH; (3) the removal of the Dalenes and their family from employment or any position of authority within HLXH; (4) the disqualification of James Wicks and his firm, Farrell Fritz, P.C., from serving as counsel to the Dalenes and HLXH; and, (5) an order to the United States Attorney's Office to prosecute James Wicks and Frank Dalene for criminal perjury.

For the following reasons, I recommend that the defendants' motions to dismiss be granted in their entirety and that, in light of this recommendation, plaintiff's cross-motion be denied as moot.

## *FACTS*

On December 11, 2003, plaintiff, on behalf of HLXH, and the Dalenes entered into an agreement to create a construction service company through the implementation of a "roll-up strategy"[1] developed by plaintiff. (Am. Compl. 2.) Pursuant to the agreement, Frank and Roy Dalene were each issued 10,000,000 shares of common stock in HLXH, thereby transferring control of HLXH from plaintiff to the Dalenes. (Am. Compl. 2.) Plaintiff resigned as Chief Executive Officer ("CEO"), Chairman of the Board and President of HLXH at that time and the Dalenes were appoint-

---

**3.** Because the Court grants defendants' motions to dismiss the Amended Complaint, the Court also denies as moot plaintiff's Order to Show Cause, filed December 7, 2009, which the Court interpreted as an appeal of Magistrate Judge Boyle's Order staying discovery in the action.

**1.** Neither the Amended Complaint or plaintiff's motion papers provide an explanation of the "roll-up strategy."

ed as the new CEO, President and Chief Financial Officer. (Am. Compl. 8.)

Thereafter, the HLXH Defendants issued various financial statements indicating their intention to follow the plaintiff's roll-up strategy.[2] (Am. Comp. 2, 8.) For example, HLXH's 2006 second quarter 10–QSB[3] stated that the company had started implementation of its business model by acquiring Telemark, Inc., an entity owned by the Dalenes, which occurred in April 2006.[4] (Am. Compl. 2, 8; HLXH 2006 10–KSB, annexed to Larkin Decl. as Ex. 6.) The 2006 second quarter 10–QSB also stated that HLXH planned to acquire a real estate broker and a property and casualty insurance company in 2006; however, these acquisitions did not occur. (Am. Compl. 8.) Plaintiff alleges that he became "troubled" by the HLXH defendants' actions shortly before HLXH acquired Telemark because, according to plaintiff, "[o]pportunities that would have moved the business plan of [HLXH] forward were turn[ed] down for reason[s] that did not make business sense[ ]." (Am. Compl. 2–3.)

Plaintiff specifically alleges that he was informed on two separate occasions by the Dalenes that corporate money had been used to pay the Dalenes' personal income taxes as well as a bill owed to defendant MHHH that belonged to a friend of the Dalenes. (Am. Compl. 3.) Plaintiff further alleges that HLXH's Chief Accounting Officer, Arthur Williams ("Williams"), was "disturbed" by the company's financial statements that were submitted to the Securities and Exchange Commission ("SEC") and that "there were items in the fourth quarter of 2006 that looked strange" to Williams. (Am. Compl. 3.)

On March 7, 2008, plaintiff, the Dalenes and Williams participated in a conference call with an investment banking firm concerning the roll-up strategy. (Am. Compl. 3.) After the conclusion of the call, Frank Dalene informed plaintiff that HLXH would not be moving forward with the roll-up strategy. (Am. Compl. 3.) That same day, plaintiff sent an email to the Dalenes requesting that they "either buy back all of the outstanding stock of [HLXH], resign as officer[s] of [HLXH] or buy back Telemark from [HLXH] by returning all of their stock." (Am. Compl. 3, 9–10.) On March 10, 2008, Lee Mendelson of MHHH contacted plaintiff and advised him that "after the 2007 Form 10KSB[5] was filed with the SEC on March 31, 2008 his issue would be addressed." (Am. Compl. 3.)

---

**2.** These include the 2006 second quarter 10–QSB, the 2006 third quarter 10–QSB, the 10–KSB for both 2006 and 2007, and the 2007 10–QSB for the first, second and third quarters. (Am. Compl. 8.)

**3.** A 10–QSB is "filed quarterly by reporting small business issuers" and "includes unaudited financial statements and provides a continuing view of the company's financial position and results of operations throughout the year." *http://learn.westlawbusiness.com/support/formtypes.html* (last visited Dec. 21, 2009). This report "must be filed for each of the first three fiscal quarters and is due within 45 days of the close of the quarter." *Id.*

**4.** Although the date of the Telemark acquisition is not pleaded in the Amended Complaint, the Court may take judicial notice of public records, such as filings made with the Securities and Exchange Commission. *See Roth v. Jennings,* 489 F.3d 499, 509 (2d Cir. 2007) ( "[W]here public records that are integral to a fraud complaint are not attached to it, the court, in considering a Rule 12(b)(6) motion, is permitted to take judicial notice of those records.").

**5.** A Form 10–KSB "is the annual report filed by reporting 'small business issuers'" and "provides a comprehensive overview of the company's business." *http://learn.westlaw business.com/support/formtypes.html* (last visited Dec. 21, 2009). This report "must be filed within 90 days after the end of the company's fiscal year." *Id.*

On March 19, 2008, Williams sent an email to the Dalenes, MHHH and REM, outlining certain problems he found with HLXH's 2006 and 2007 10–KSB's. (Am. Compl. 3, 9.) The Dalenes responded with an email stating that Terry Most ("Most") of REM was threatening to quit as HLXH's auditor because Williams was accusing him of malpractice, which would hurt HLXH's reputation. (Am. Compl. 3, 9.) On March 20, 2008, the Dalenes terminated Williams' employment with HLXH for cause. (Am. Compl. 3–4.) Plaintiff alleges that the same day, he was "locked out of [HLXH's] offices and payments on the consultant contract his company Sea Holdings, Ltd. had with HLXH stopped being paid." (Am. Compl. 4, 10.)

On March 31, 2008, HLXH filed its 2007 10–KSB with the SEC "with a balance sheet that did not balance."[6] (Am. Compl. 4, 10.) Thereafter, on June 17, 2008, plaintiff advised C.V. Kilbane, Jr. of REM of the problems with HLXH's 10–KSB for both 2006 and 2007. (Am. Compl. 4, 10.) According to plaintiff, despite this information, REM "chose to do nothing." (Am. Compl. 4.)

HLXH filed its 2008 third quarter 10–QSB with the SEC on November 14, 2009. (Am. Compl. 4.) According to plaintiff, the 10–QSB states that HLXH paid both Frank and Roy Dalene $50,000 each as bonuses for the previous year, which plaintiff alleges is "a very unusual practice with only two months remaining in the present year and the company losing money." (Am. Compl. 4, 11.) Plaintiff further alleges that on November 25, 2008, the Dalenes purchased certain real property located at 159 North Main Street in East Hampton through a company known as Potato House LLC, which is owned by the Dalenes. (Am. Compl. 4–5, 11.) According to plaintiff, this purchase is "in direct conflict

with [HLXH's] business plan." (Am. Compl. 5.)

On March 4, 2009, Frank Dalene informed plaintiff that the Dalenes' "decisions not to follow [plaintiff's] advice were indisputably the correct decisions to make based on present economic conditions" and further advised plaintiff that his "advice was absolutely, undeniably dead wrong." (Am. Compl. 5, 11.) Plaintiff asserts that this statement, combined with the Dalenes' alleged actions in using funds to purchase property for themselves rather than for HLXH, demonstrates that the HLXH Defendants never had any intention of pursuing plaintiff's roll-up strategy. (Am. Compl. 5.)

On December 31, 2008, HLXH filed a Form 15 with the SEC to deregister. (Am. Compl. 5, 11.) HLXH filed an amendment to its 2007 10–KSB on May 27, 2009, correcting the balance sheet. (Am. Compl. 12.)

Plaintiff brings this action pursuant to the Securities Exchange Act of 1934 (the "Exchange Act") and asserts claims for securities fraud against all defendants pursuant to Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), as well as Rule 10b–5 promulgated thereunder, 17 C.F.R. § 240.10b–5, alleging that defendants made materially false and misleading statements in HLXH's publicly filed financial reports. Plaintiff also asserts control person liability claims against the individual defendants, Frank and Roy Dalene, pursuant to Section 20(a) of the Exchange Act, 15 U.S.C. § 78t.

## DISCUSSION

### I. *Legal Standard*

#### A. *Motions to Dismiss*

"To survive a motion to dismiss, a complaint must contain sufficient factual mat-

---

**6.** According to plaintiff, the amount reported on the balance sheet was $2,209,079 when it should have been $2,033,079. (Am. Compl. 10.)

ter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* —— U.S. ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "Facial plausibility" is achieved when the "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 129 S.Ct. at 1949 (citing *Twombly,* 550 U.S. at 556). As a general rule, the court is required to accept as true all of the allegations contained in the complaint. *See Iqbal,* 129 S.Ct. at 1949; *Kassner v. 2nd Ave. Delicatessen, Inc.,* 496 F.3d 229, 237 (2d Cir.2007).

However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements ... are not entitled to the assumption of truth." *Iqbal,* 129 S.Ct. at 1949–50 (citation omitted); *see also Twombly,* 550 U.S. at 555, 127 S.Ct. 1955 (stating that the Court is "not bound to accept as true a legal conclusion couched as a factual allegation"). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations," which state a claim for relief. *Iqbal,* 129 S.Ct. at 1950. A complaint that "tenders 'naked assertion[s]' devoid of 'further factual enhancement' " will not suffice. *Iqbal,* 129 S.Ct. at 1949 (quoting *Twombly,* 550 U.S. at 557, 127 S.Ct. 1955). Although Rule 8 of the Federal Rules of Civil Procedure "marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, ... it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal,* 129 S.Ct. at 1950. Rather, only a complaint that "states a plausible claim for relief" will survive a motion to dismiss. *Id.*

Since the plaintiff herein is acting *pro se,* the Court is required to afford him leniency, holding his complaint to "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus,* 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (quoting *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)). "Nonetheless, to survive a Rule 12(b)(6) motion, a *pro se* plaintiff must support his claims with 'specific and detailed factual allegations, not stated in wholly conclusory terms.' " *Wightman–Cervantes v. ACLU,* No. 06 Civ. 4708, 2007 WL 1805483, at *1 (S.D.N.Y. June 25, 2007) (quoting *Friedl v. City of New York,* 210 F.3d 79, 85–86 (2d Cir.2000)). " '[B]ald assertions and conclusions of law' are not adequate" to withstand a motion to dismiss. *Wilson v. Family Dollar Stores,* No. 06–CV–639, 2007 WL 952066, at *9 (E.D.N.Y. Mar. 29, 2007) (quoting *Tarshis v. Riese Org.,* 211 F.3d 30, 35 (2d Cir. 2000)).

### B. *Securities Fraud Claims*

In addition, "[s]ecurities fraud claims are subject to heightened pleading requirements that the plaintiff must meet to survive a motion to dismiss." *In re PXRE Group, Ltd. Sec. Litig.,* 600 F.Supp.2d 510, 524 (S.D.N.Y.2009) (quoting *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 99 (2d Cir.2007)). Such heightened pleading requirements are found in both Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act (the "PSLRA"), 15 U.S.C. § 78u–4(b). *See In re PXRE,* 600 F.Supp.2d at 524; *see also Vladimir v. Bionevision Inc.,* 606 F.Supp.2d 473, 484 (S.D.N.Y.2009) ("Complaints alleging securities fraud also must comply with the heightened pleading requirements of the PSLRA and Fed. R.Civ.P. 9(b) ....").

### 1. *Rule 9(b)*

■ Rule 9(b) of the Federal Rules of Civil Procedure requires that averments of fraud be "state[d] with particularity." Fed.R.Civ.P. 9(b); *see also Pollio v. MF Global, Ltd.,* 608 F.Supp.2d 564, 570 (S.D.N.Y.2009) ("It is well-established that pursuant to Fed.R.Civ.P. 9(b), a plaintiff alleging fraud must state with particularity in what respects the statements at issue were false."). "This pleading constraint serves to provide a defendant with fair notice of a plaintiff's claim, safeguard his reputation from improvident charges of wrongdoing, and protect him against strike suits." *In re PXRE,* 600 F.Supp.2d at 524 (quoting *ATSI Commc'ns,* 493 F.3d at 99) (additional citation omitted). To satisfy Rule 9(b), a plaintiff alleging fraud must: "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *In re PXRE,* 600 F.Supp.2d at 524 (quoting *Rombach v. Chang,* 355 F.3d 164, 170 (2d Cir.2004)); *see also Vladimir,* 606 F.Supp.2d at 484 (same); *In re DRDGold Ltd. Secs. Litig.,* 472 F.Supp.2d 562, 567 (S.D.N.Y.2007) (same). "Allegations that are conclusory or unsupported by factual assertions are insufficient." *ATSI Commc'ns,* 493 F.3d at 99.

### 2. *The PSLRA*

■ The PSLRA has expanded the requirements of Rule 9(b) within the context of securities fraud litigation. *See* 15 U.S.C. § 78u–4(b); *see also In re PXRE,* 600 F.Supp.2d at 524. In addition to complying with the particularity requirement of Rule 9(b), plaintiffs alleging securities fraud must also "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u–4(b); *see Pollio,* 608 F.Supp.2d at 570; *Vladimir,* 606 F.Supp.2d at 484; *see also Dura Pharms., Inc. v. Broudo,* 544 U.S. 336, 345, 125 S.Ct. 1627, 161 L.Ed.2d 577 (2005) ("The [PSLRA] insists that securities fraud complaints specify each misleading statement; that they set forth the facts on which [a] belief that a statement is misleading was formed; and that they state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."). "Therefore, '[w]hile we normally draw reasonable inferences in the non-movant's favor on a motion to dismiss,' the PSLRA 'establishes a more stringent rule for inferences involving scienter' because the PSLRA requires particular allegations giving rise to a strong inference of scienter." *ECA, Loc. 134 IBEW Joint Pension Trust v. JP Morgan Chase Co.,* 553 F.3d 187, 196 (2d Cir.2009) (quoting *Teamsters Loc. 445 Freight Div. Pension Fund v. Dynex Capital Inc.,* 531 F.3d 190, 194 (2d Cir.2008)) (alteration in original). Accordingly, "[s]ecurities fraud actions based on 'an unsupported general claim' constitute 'bare pleadings' and cannot survive a motion to dismiss." *Vladimir,* 606 F.Supp.2d at 484 (quoting *In re Scholastic Corp. Secs. Litig.,* 252 F.3d 63, 72–73 (2d Cir.2001)) (additional citation omitted).

### II. *Plaintiff's Section 10(b) and Rule 10b–5 Claims*

■ "Section 10(b) of the Exchange Act is designed to protect investors by serving as a 'catchall provision' which creates a cause of action for manipulative practices by defendants acting in bad faith." *In re PXRE,* 600 F.Supp.2d at 527 (quoting *In re Openwave Sys. Secs. Litig.,* 528 F.Supp.2d 236, 249 (S.D.N.Y.2007)) (additional citation omitted). Specifically, Section 10(b) prohibits the use of "any

manipulative or deceptive practice 'in connection with the purchase or sale of any [registered] security ....'" *Vladimir,* 606 F.Supp.2d at 484 (quoting 15 U.S.C. § 78j(b)) (alteration in original).

Rule 10b–5, promulgated by the SEC pursuant to Section 10, "more specifically delineates what constitutes a manipulative or deceptive [practice]," *In re DRDGold,* 472 F.Supp.2d at 567 (quoting *Press v. Chemical Inv. Servs. Corp.,* 166 F.3d 529, 534 (2d Cir.1999)), and makes it unlawful for any person:

> (a) To employ any device, scheme, or artifice to defraud,
>
> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
>
> (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,
>
> in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b–5.

▮▮▮▮ Accordingly, to state a claim for relief under Section 10(b) and Rule 1 0b–5, a plaintiff must allege the following elements: "(1) a material misrepresentation (or omission); (2) scienter, *i.e.,* a wrongful state of mind; (3) a connection with the purchase or sale of a security; (4) reliance, often referred to in cases involving public securities markets (fraud-on-the-market cases) as 'transaction causation;' (5) economic loss; and (6) 'loss causation,' *i.e.,* a causal connection between the material misrepresentation and the loss." *Vladimir,* 606 F.Supp.2d at 484 (quoting *Dura Pharms.,* 544 U.S. at 341–42, 125 S.Ct. 1627); *In re PXRE,* 600 F.Supp.2d at 527 (same); *see also ECA, Loc. 134 IBEW Joint Pension Trust,* 553 F.3d at 197 ("In order to succeed on a claim, a plaintiff

must establish that the defendant, in connection with the purchase or sale of securities, made a materially false statement or omitted a material fact, with scienter, and that the plaintiff's reliance on the defendant's action caused injury to the plaintiff."); *Trinity Bui v. Industrial Enter. of Am., Inc.,* 594 F.Supp.2d 364, 370 (S.D.N.Y.2009) ("To adequately state a cause of action for securities fraud under § 10(b) of the Exchange Act and Rule 10b–5, a plaintiff must assert facts showing that the defendant made a false statement or omitted a material fact, with scienter, and that plaintiff's reliance on defendant's action caused plaintiff injury."). Breaches of fiduciary duty or "corporate mismanagement" do not rise to the level of securities fraud under Section 10(b). *Santa Fe Indus. v. Green,* 430 U.S. 462, 476, 479, 97 S.Ct. 1292, 51 L.Ed.2d 480 (1977); *Luce v. Edelstein,* 802 F.2d 49, 55 (2d Cir.1986) (upholding district court's finding that "allegations of mismanagement do not state a claim under Section 10(b)").

### A. *Purchase or Sale of a Security*

As set forth in the text of Section 10(b), to succeed on a claim for securities fraud, a plaintiff must establish that the alleged fraudulent statement or deceptive act occurred "in connection with the purchase or sale of any security." 15 U.S.C. § 78j(b); *see also Stoneridge Inv. Partners, LLC v. Scientific–Atlanta, Inc.,* 552 U.S. 148, 160, 128 S.Ct. 761, 169 L.Ed.2d 627 (2008); *Ingenito v. Bermec Corp.,* 376 F.Supp. 1154, 1170 (S.D.N.Y.1974) (noting that a Section 10(b) claim requires that the fraudulent statement be "in connection with a purchase or sale of securities ... rather than their mere holding or retention"). The only securities transaction alleged in the Amended Complaint occurred in December 2003, when plaintiff transferred his shares in HLXH to the Dalenes as part of their business agreement "to create a con-

struction service company through a roll-up strategy developed by the Plaintiff." (Am. Compl. 2, 8.) There is no other purchase or sale of securities of any kind alleged in the Amended Complaint. Accordingly, because an essential element of plaintiff's claim is the demonstration of his reliance on defendants' alleged misstatements in purchasing or selling a security, any alleged misrepresentation must have taken place prior to December 2003.

■ However, plaintiff fails to allege any fraudulent misrepresentations whatsoever, let alone with the particularity required by Rule 9(b) and the PSLRA, made by any of the defendants prior to December 2003. Rather, the Amended Complaint is replete with statements allegedly made by the HLXH Defendants beginning in 2006 and continuing through 2009, which plaintiff contends to be fraudulent.[7] Plaintiff takes great pains to detail the various public filings made by the HLXH Defendants from 2006 to 2009 and the various statements contained within them. Yet plaintiff fails to establish any connection between these alleged misstatements and a purchase or sale of securities, particularly since the only securities transaction alleged to have taken place preceded the statements that plaintiff asserts are fraudulent. Accordingly, plaintiff has failed to allege an actionable misrepresentation made in connection with a purchase or sale of securities.

### B. *Material Misrepresentation*

■ "The materiality of a misstatement depends on whether 'there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to [act].'" *ECA, Loc. 134 IBEW Joint Pension Trust,* 553 F.3d at 197 (quoting *Basic Inc. v. Levinson,* 485

U.S. 224, 240, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988)) (additional quotation omitted). Accordingly, for an alleged misrepresentation to be material, "there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *ECA, Loc. 134 IBEW Joint Pension Trust,* 553 F.3d at 197 (quoting *Basic Inc.,* 485 U.S. at 231–32) (additional quotation omitted). In determining whether an alleged misrepresentation is material, courts "must engage in a fact-specific inquiry." *ECA, Loc. 134 IBEW Joint Pension Trust,* 553 F.3d at 197 (citing *Basic Inc.,* 485 U.S. at 240, 108 S.Ct. 978).

In addition, as stated *supra,* to adequately allege a material misrepresentation, plaintiff is required to plead with particularity the specific statements he contends are fraudulent, the identity of the speaker, the time and place that the statements were made and why the statements are fraudulent. *See In re PXRE,* 600 F.Supp.2d at 524. The Amended Complaint wholly fails to satisfy this standard.

■ With respect to the only securities transaction alleged in the Amended Complaint, as discussed *supra,* plaintiff makes general and conclusory allegations that the HLXH Defendants failed to fulfill "the commitment made to the [plaintiff] when the partnership was formed in December 2003," (Am. Compl. 10), that the Dalenes "were fully aware that they had agreed with the Plaintiff to move forward with the planned roll-up strategy and that is the only reason the Plaintiff agreed to the partnership and merger," (Am. Compl. 13–14), and that "[a]ll defendants were aware that stockbrokers and investor[s] were in-

---

**7.** Plaintiff does not allege a single misrepresentation made by defendants MHHH or REM anywhere in the Amended Complaint but instead appears to assert an aiding and abetting claim against those defendants, discussed *infra.*

formed of the [roll-up] strategy ... and that was the only reason they purchased [the] stock." (Am. Compl. 14.) However, plaintiff fails to provide any specifics with respect to these allegations, as required by Rule 9(b) and the PSLRA. Plaintiff does not specify what specific statements he asserts to be fraudulent, let alone who made them or where and when they occurred. Nor does plaintiff explain why such statements are fraudulent.

Accordingly, plaintiff has failed to adequately allege a material misrepresentation to sustain a claim for securities fraud under Section 10(b) or Rule 10b–5.

## C. Scienter

Plaintiff similarly fails to sufficiently allege scienter. In order to adequately plead scienter under the PSLRA, a plaintiff must "state with particularity facts giving rise to a *strong* inference that the defendant acted with the required state of mind." *In re PXRE*, 600 F.Supp.2d at 527 (quoting 15 U.S.C. § 78u–4(b)(2)) (emphasis in original); *see also In re DRDGold*, 472 F.Supp.2d at 570 ("The PSLRA requires that the complaint allege sufficient facts to support a strong inference of the requisite state of mind."). "The requisite state of mind in a Rule 10b–5 action is an intent to deceive, manipulate or defraud." *In re PXRE*, 600 F.Supp.2d at 527 (quoting *Ganino v. Citizens Utils. Co.*, 228 F.3d 154, 168 (2d Cir.2000)) (additional quotation and internal quotation marks omitted); *see also ECA, Loc. 134 IBEW Joint Pension Trust*, 553 F.3d at 198.

In interpreting the PSLRA's "strong inference" requirement, the Supreme Court has held that "in determining whether the pleaded facts give rise to a 'strong' inference of scienter, the court must take into account plausible opposing inferences." *In re PXRE*, 600 F.Supp.2d at 528 (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 127

S.Ct. 2499, 2509, 168 L.Ed.2d 179 (2007)). For a complaint to survive dismissal, the inference of scienter must be "more than merely plausible or reasonable-it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *ECA, Loc. 134 IBEW Joint Pension Trust*, 553 F.3d at 198 (quoting *Tellabs*, 127 S.Ct. at 2504–05) (additional quotation omitted). In assessing whether a strong inference of scienter is adequately alleged, "a court must be careful to consider whether '*all* of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard.' " *In re PXRE*, 600 F.Supp.2d at 528 (quoting *Tellabs*, 127 S.Ct. at 2509) (emphasis in original). In short, courts "must consider both the inferences urged by the plaintiff and any competing inferences rationally drawn from all the facts alleged, taken collectively." *ECA, Loc. 134 IBEW Joint Pension Trust*, 553 F.3d at 198 (citing *Tellabs*, 127 S.Ct. at 2504, 2509).

A plaintiff can fulfill the scienter requirement by establishing either (1) that defendants had the motive and opportunity to commit fraud, or (2) facts constituting "strong circumstantial evidence of conscious misbehavior or recklessness." *ECA, Loc. 134 IBEW Joint Pension Trust*, 553 F.3d at 198 (citing cases); *see also In re PXRE*, 600 F.Supp.2d at 528; *Trinity Bui*, 594 F.Supp.2d at 370; *In re DRDGold*, 472 F.Supp.2d at 570. "Motive and opportunity can be established by demonstrating that defendants benefitted 'in a concrete and personal way' from the alleged fraud." *Trinity Bui*, 594 F.Supp.2d at 370 (quoting *Novak v. Kasaks*, 216 F.3d 300, 311 (2d Cir.2000)); *see also In re DRDGold*, 472 F.Supp.2d at 570 ("Plaintiffs' allegations of motive must entail concrete benefits that could be realized

by one or more of the false statements and wrongful nondisclosures alleged."). However, motives common to "virtually all corporate insiders" or "any publicly owned, for profit endeavor," *In re DRDGold*, 472 F.Supp.2d at 570 (quoting *Kalnit v. Eichler*, 264 F.3d 131, 138–39 (2d Cir.2001)), such as "a desire for the corporation to appear profitable [are] 'insufficient' to plead motive." *In re Merrill Lynch*, 272 F.Supp.2d at 262 (quoting *Kalnit*, 264 F.3d at 139–40).

 To plead scienter through conscious misbehavior or recklessness, a plaintiff must allege "at the least, conduct which is highly unreasonable and which represents an extreme departure from the standards of ordinary care to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it." *ECA, Loc. 134 IBEW Joint Pension Trust*, 553 F.3d at 203 (quoting *Kalnit*, 264 F.3d at 142) (additional quotation omitted); *In re DRDGold*, 472 F.Supp.2d at 571 (same); *In re Merrill Lynch*, 272 F.Supp.2d at 263 (same). "Recklessness in the scienter context cannot be merely enhanced negligence." *In re PXRE*, 600 F.Supp.2d at 535 (quoting *In re JP Morgan Chase Sec. Litig.*, 363 F.Supp.2d 595, 624 (S.D.N.Y. 2005)). More specifically, "an allegation that a defendant merely 'ought to have known' is not sufficient to allege recklessness." *In re PXRE*, 600 F.Supp.2d at 535 (quoting *Hart v. Internet Wire, Inc.*, 145 F.Supp.2d 360, 368 (S.D.N.Y.2001)) (additional quotation omitted). Accordingly, "[t]o satisfy this 'highly fact-based inquiry,' a complaint must 'specifically allege[ ] defendants' knowledge of facts or access to information contradicting their public statements.'" *In re Merrill Lynch*, 272 F.Supp.2d at 263 (quoting *Kalnit*, 264 F.3d at 142).

 The within Amended Complaint is completely devoid of any allegations that raise a strong inference that the HLXH Defendants acted with scienter. The thrust of plaintiff's assertions is that "Defendants never had any intention of pursuing the roll-up strategy" allegedly agreed to in 2003. (Am. Compl. 5.) However, plaintiff offers no facts to support this assertion. There is nothing in the Amended Complaint that raises even a remote inference that, at the time the HLXH Defendants and plaintiff entered into their agreement in 2003, defendants made any false statements concerning implementing plaintiff's roll-up strategy. Nor is there anything pleaded that would permit the Court to infer that defendants never had any intention of carrying out the agreed upon roll-up strategy at the time they entered into their agreement with plaintiff. Rather, plaintiff alleges in the Amended Complaint that the Dalenes advised him in March 2009 that the decision not to implement the roll-up strategy was based on "present economic conditions." (Am. Compl. 5, 11.) I find that this may be an equally plausible explanation for the failure to follow through on the agreed upon plan.

Accordingly, plaintiff has failed to adequately plead scienter as required under the PSLRA.

## D. *Causation*

 Finally, to state a claim for securities fraud, a plaintiff must adequately plead both transaction causation and loss causation. *See Emergent Capital Inv. Mgmt., LLC v. Stonepath Group, Inc.*, 343 F.3d 189, 196–97 (2d Cir.2003); *Trinity Bui*, 594 F.Supp.2d at 370; *In re DRDGold*, 472 F.Supp.2d at 575. "[T]ransaction causation refers to the causal link between the defendant's misconduct and the plaintiff's decision to buy or sell securities." *Emergent Capital*, 343 F.3d at 197 (citing *Castellano v. Young & Rubi-*

*cam, Inc.*, 257 F.3d 171, 186 (2d Cir.2001)). To establish transaction causation, plaintiff must demonstrate that "but for the claimed misrepresentations or omissions, [he] would not have entered into the detrimental securities transaction." *Emergent Capital*, 343 F.3d at 197 (citing *Castellano*, 257 F.3d at 186); *Trinity Bui*, 594 F.Supp.2d at 370 (citation omitted).

▆▆▆ "Loss causation, by contrast, is the causal link between the alleged misconduct and the economic harm ultimately suffered by the plaintiff." *Emergent Capital*, 343 F.3d at 197 (citing *Suez Equity Investors, L.P. v. Toronto–Dominion Bank*, 250 F.3d 87, 96 (2d Cir.2001)); *see also In re Merrill Lynch*, 272 F.Supp.2d at 261 ("To establish loss causation, a plaintiff must show[ ] that the economic harm it suffered occurred as a result of the alleged misrepresentations."). To demonstrate loss causation, the loss must be "foreseeable and . . . caused by the materialization of the concealed risk." *Trinity Bui*, 594 F.Supp.2d at 371 (quoting *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 172 (2d Cir.2005)); *In re DRDGold*, 272 F.Supp.2d at 575 (same).

▆▆▆ As discussed *supra*, plaintiff fails to connect any alleged misrepresentations with his 2003 securities transaction. All of the alleged misrepresentations by defendants occurred from 2006 to 2009. Accordingly, plaintiff cannot demonstrate that he relied on any of the defendants' alleged misrepresentations in deciding whether to enter into the 2003 securities transaction. Moreover, plaintiff cannot link any damages he allegedly suffered to any such misrepresentations. In the Amended Complaint, plaintiff simply alleges that "[a]s a direct and proximate result of Defendants['] wrongful conduct, Plaintiff suffered damages in connection with his respective purchase and sale of [HLXH's] securities . . . ." (Am. Compl. 19.) Plaintiff is essentially employing a "pleading tech-

nique that couples a factual statement with a conclusory allegation," which is insufficient to survive a motion to dismiss. *In re DRDGold*, 472 F.Supp.2d at 572 (quoting *Rombach*, 355 F.3d at 176).

Accordingly, plaintiff has failed to adequately plead a claim for securities fraud under Section 10(b) or Rule 10b–5.

### E. *Aiding and Abetting*

▆▆▆ With respect to defendants HMMM and REM, plaintiff appears to be asserting claims for aiding and abetting securities fraud. However, "[t]he § 10(b) implied private right of action does not extend to aiders and abettors." *Stoneridge*, 552 U.S. at 158, 128 S.Ct. 761; *see also Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 177, 114 S.Ct. 1439, 128 L.Ed.2d 119 (1994) (holding that Section 10(b) "does not itself reach those who aid and abet"). As the Supreme Court has held, allowing an aiding and abetting claim under Section 10(b) would "circumvent the reliance requirement" by permitting defendants to be found liable "without any showing that the plaintiff relied upon the aider and abettor's statements or actions." *Central Bank*, 511 U.S. at 180, 114 S.Ct. 1439 (citations omitted). Rather, in order to be held liable under Section 10(b), a "secondary actor," such as an accountant or an attorney, "must satisfy each of the elements or preconditions for [primary] liability," *Stoneridge*, 552 U.S. at 158, 128 S.Ct. 761, including "a material misstatement (or omission) on which a purchaser or seller of securities relies." *Central Bank*, 511 U.S. at 191, 114 S.Ct. 1439.

▆▆▆ Here, the Amended Complaint does not allege a single misrepresentation by either MHHH or REM upon which plaintiff relied in purchasing or selling securities. Rather, plaintiff alleges that MHHH and REM were aware of certain

allegedly false statements in HLXH's financial reports and failed to take action to correct them. (Am.Comp.4, 10–11, 14–16.) Such allegations are insufficient to support a finding of primary liability by MHHH or REM and under *Central Bank* and *Stoneridge*, secondary actors "may no longer be held primarily liable under § 10(b) for mere knowledge and assistance in the fraud." *Wright v. Ernst & Young LLP,* 152 F.3d 169, 176 (2d Cir.1998) (citing *Central Bank,* 511 U.S. at 177, 114 S.Ct. 1439) (additional citation omitted).

Based on the foregoing, defendants' motions to dismiss plaintiff's Section 10(b) and Rule 10b–5 claims should be granted.

### F. Statute of Limitations

Even assuming *arguendo* that plaintiff could state an actionable claim for securities fraud, claims brought pursuant to Section 10(b) of the Exchange Act must be initiated no later "than the earlier of: (1) 2 years after the discovery of the facts constituting the violation; or (2) 5 years after such violation." *Plymouth County Ret. Ass'n v. Schroeder,* 576 F.Supp.2d 360, 375 (E.D.N.Y.2008) (quoting 28 U.S.C. § 1658(b)). Where a plaintiff has inquiry notice of the facts constituting a violation, his claim will be deemed time-barred. *See In re Merrill Lynch & Co. Research Reports Secs. Litig.,* 272 F.Supp.2d 243, 265 (S.D.N.Y.2003) (holding that where "[p]laintiff was on inquiry notice of her claim that [defendant] purportedly issued misleading research reports over two years before she sued," her claim was "thus time-barred").

In the within action, the Amended Complaint alleges that plaintiff "began to be-come troubled by the Defendants['] actions" shortly before HLXH acquired Telemark in 2006. (Am. Compl. 2.) Specifically, plaintiff alleges that HLXH stated in its 2006 second quarter 10–QSB that it had started implementation of the roll-up strategy by acquiring Telemark and "that it was going to acquire a real estate broker and a property and casualty insurance company in 2006." (Am. Compl. 8.) According to plaintiff, however, these events did not occur "and the public was never informed of the reason." (Am. Compl. 8.) Plaintiff further alleges that HLXH's 2006 and 2007 10–QSB's "all reported the planned roll-up strategy but [HLXH] failed to implement the plan." (Am. Compl. 8.) These statements form the basis for plaintiff's securities fraud claims, of which he alleges to have had knowledge since as early as 2006.[8] Plaintiff did not commence the instant action, however, until April 3, 2009, more than two years after he had knowledge of the facts constituting the alleged securities fraud violation.

Accordingly, plaintiff's Section 10(b) and Rule 10b–5 claims appear to be time-barred.

### III. Plaintiff's Section 20(a) Claim

Plaintiff also brings claims for control person liability against the Dalenes, individually, pursuant to Section 20(a) of the Exchange Act. (Am. Compl. 19–20.) To establish liability under Section 20(a), a plaintiff must demonstrate: "(1) a primary violation by a controlled person; (2) control of the primary violator by the defendant; and (3) that the controlling person was in some meaningful sense a culpable participant in the primary viola-

---

**8.** With respect to the statements plaintiff asserts to be actionable, they all occurred subsequent to the 2003 securities transaction, which is the only securities transaction alleged to have taken place. As discussed *supra,* none of the statements that plaintiff alleg-es to have been issued by defendants between 2006 and 2009 can form the basis for a securities fraud violation because plaintiff could not have relied on them when entering into his securities fraud transaction since they did not precede the transaction.

tion." *In re PXRE*, 600 F.Supp.2d at 548 (citing *Boguslavsky v. Kaplan*, 159 F.3d 715, 720 (2d Cir.1998)); *see also Vladimir*, 606 F.Supp.2d at 496 ("In order to establish control person liability, a plaintiff must show a primary violation by the controlled person and control of the primary violator by the targeted defendant.") Since plaintiff has failed to adequately allege a primary violation of Section 10(b), the control person claims under Section 20(a) fail as well. *See, e.g., Vladimir*, 606 F.Supp.2d at 496–97 (finding that since plaintiff had not adequately alleged that the "controlled person" violated the Exchange Act, plaintiff could not state a claim for control person liability against the individual defendants); *In re PXRE*, 600 F.Supp.2d at 548 ("Since the Court has held that there is no primary violation under section 10(b) of the Exchange Act, Defendants' motion to dismiss the section 20(a) claim is granted."); *Trinity Bui*, 594 F.Supp.2d at 373 ("To the extent that Plaintiffs have failed to sufficiently allege predicate violations of § 10(b), the control person claims under § 20(a) of the Exchange Act also fail."); *In re Merrill Lynch*, 272 F.Supp.2d at 264 ("Because Plaintiff has failed to state a claim against the Defendants for a primary violation of the federal securities law, her claims for control person liability necessarily fail.").

Based on the foregoing, the HLXH Defendants' motion to dismiss plaintiff's Section 20(a) claim should be granted.

### IV. *Plaintiff's Cross–Motion for Summary Judgment*

As stated *supra*, plaintiff cross-moves for summary judgment and requests various relief, including, *inter alia*, the appointment of a receiver and the disqualification of James Wicks and his law firm from representing HLXH. As a threshold matter, plaintiff failed to file a Rule 56.1 statement in support of his motion for summary judgment, as required under the

Local Civil Rules for this district. This alone is grounds to deny plaintiff's cross-motion. *See Doe v. Nat'l Bd. of Podiatric Med. Examiners*, No. 03 Civ. 4034, 2004 WL 912599, at *3, 2004 U.S. Dist. LEXIS 7409, at *9 (S.D.N.Y. Apr. 29, 2004) ("When a moving party fails to file a statement as required under Local Rule 56.1, it is within the discretion of the court to overlook that failure or to deny the motion."); *United States v. Abady*, No. 03 Civ. 1683, 2004 WL 444081, at *2–3, 2004 U.S. Dist. LEXIS 3775, at *7 (S.D.N.Y. Mar. 9, 2004) (same); *Martinez v. Headley*, No. 99 CV 1735, 2001 WL 483448, at *1, 2001 U.S. Dist. LEXIS 4666, at *3, 2001 WL 483448 (E.D.N.Y. Jan. 18, 2001) ("Failure to comply with [Rule 56.1] constitutes grounds for denial of the motion."). Moreover, in light of the foregoing recommendation that defendants' motions to dismiss be granted and that this action be dismissed in its entirety, I recommend that plaintiff's cross-motion for summary judgment be denied as moot.

### RECOMMENDATION

For the foregoing reasons, I recommend that defendants' motions to dismiss be granted and that plaintiff's Amended Complaint be dismissed in its entirety. In light of this recommendation, I further recommend that plaintiff's cross-motion for summary judgment be denied as moot.

### OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Any objections to this Report and Recommendation must be filed with the Clerk of the Court with a copy to the undersigned within ten (10) days of receipt of this report. Failure to file objections within ten (10) days will preclude further appellate review of the District Court's order. 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(e), and 72(b); *IUE AFL–CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir.1993), *cert. denied*, 513 U.S. 822,

115 S.Ct. 86, 130 L.Ed.2d 38 (1994); *Frank v. Johnson,* 968 F.2d 298 (2d Cir.1992), *cert. denied,* 506 U.S. 1038, 113 S.Ct. 825, 121 L.Ed.2d 696 (1992); *Small v. Sec'y of Health and Human Servs.,* 892 F.2d 15, 16 (2d Cir.1989) (per curiam).

**SO ORDERED.**